1

2

3   **UNITED STATES DISTRICT COURT**

4   **DISTRICT OF NEVADA**

5   * * *

6   DAVID ROY STILWELL, *et al.*,            Case No. 2:11-cv-01549-RFB-VCF

7              Plaintiffs,

8       v.                                   **<u>ORDER</u>**

9   CLARK COUNTY, *et al*.,

10             Defendants.

11

12  **I.      INTRODUCTION**

13          This matter is before the Court on several motions to dismiss filed by Defendants, who

14  are various Nevada municipalities, law enforcement agencies, and law enforcement officers. In

15  this case, Plaintiffs, a group of motorcycle riders residing in Nevada, challenge the enforcement

16  of a Nevada statute governing the use of motorcycle helmets, N.R.S. 486.231 (the "Helmet

17  Law"). Plaintiffs allege that the entity and supervisory Defendants failed to train the individual

18  officers in how to identify helmets that do or do not comply with the Helmet Law and how to

19  collect the evidence necessary to support a citation for violating that law. As a result, Plaintiffs

20  allege, the officers engaged in a pattern and practice of arbitrary and discriminatory enforcement

21  of the Helmet Law by issuing citations for violations of that law without probable cause. For the

22  reasons discussed below, the Court finds that Plaintiffs have failed to state a claim for violation

23  of their constitutional rights and that further amendment would be futile. Plaintiffs' claims are

24  therefore dismissed with prejudice.

25

26  **II.     BACKGROUND**

27          **A.      Procedural History**

28          Plaintiffs filed their Class Action Complaint for Damages and Injunctive Relief (ECF No.

1) on September 27, 2011. The original Complaint named Clark County, the City of Boulder City, the City of North Las Vegas, the City of Henderson, the City of Mesquite, and the City of Las Vegas as defendants. In their original Complaint, Plaintiffs asserted four causes of action: violation of the Fourth Amendment, violation of the Fourteenth Amendment, malicious prosecution, and abuse of process. Defendants each moved to dismiss the Complaint.

On February 21, 2012, following oral argument, the Court issued a written order granting Defendants' motions to dismiss for failure to state a claim. ECF No. 42. The Court denied leave to amend, finding that Plaintiffs' proposed amended complaint, which was filed in connection with their oppositions to the motions to dismiss, suffered from the same deficiencies as the original complaint and therefore demonstrated that further amendment would be futile. Id. On November 27, 2013, the U.S. Court of Appeals for the Ninth Circuit vacated the Court's Order granting the motion to dismiss and remanded the case for further proceedings. ECF No. 56. The Ninth Circuit held that while the Court did not err in dismissing Plaintiffs' complaint, it abused its discretion in denying leave to amend. Id. The Ninth Circuit found that the Court did not provide specific reasons for its denial of leave to amend and that its decision to do so was contrary to the Court's previous assurances to Plaintiffs at oral argument that they would be granted leave to amend and were not "married" to their proposed first amended complaint. Id.

Plaintiffs filed their First Amended Class Action Complaint ("FAC") on January 31, 2014. ECF No. 60. In the FAC, Plaintiffs name the following additional Defendants: the Las Vegas Metropolitan Police Department ("LVMPD"); the Nevada Highway Patrol ("NHP"); the directors and chiefs of police for NHP, Clark County, North Las Vegas, Boulder City, Henderson, and Mesquite; and various individual police officers employed by LVMPD, NHP, and the Boulder City and North Las Vegas police departments. Id. In addition, Plaintiffs abandoned their original four claims in favor of three causes of action brought under 42 U.S.C. § 1983. Id.

On March 18, 2014, NHP and the two NHP officers named in the FAC (collectively, the "NHP Defendants") moved to dismiss the claims alleged against them, arguing that NHP is not a proper person subject to liability under Section 1983 and that the NHP officers are entitled to

qualified immunity. ECF No. 102. On March 20, 2014, the City of Henderson and Patrick E. Moers, in his official capacity as Chief of Police for the City of Henderson (collectively, the "Henderson Defendants") moved to dismiss the claims alleged against them for failure to state a claim. ECF No. 103. On March 21, 2014, the remaining Defendants moved to dismiss the claims alleged against them on several bases. ECF No. 106.

### B.    Alleged Facts

In their FAC, Plaintiffs allege the following facts. Nevada's Helmet Law, codified at N.R.S. 486.231, was enacted in 1971 and required the Department of Motor Vehicles and Public Safety to adopt standards for protective headgear and glasses, goggles, or face shields to be worn by motorcycle drivers and passengers. The Department did not expressly adopt any such standards until 1994, when it adopted the regulations contained in 49 C.F.R. § 571.218, the National Highway Transportation and Safety Administration's ("NHTSA") Federal Motor Vehicle Safety Standard No. 218 (the "NHTSA Standard"). The NHTSA Standard establishes a process whereby a manufacturer can certify, using the "DOT" symbol and other labels, that the helmet conforms to the applicable safety standards. NHTSA does not prescribe the size, weight, or minimum head coverage that a helmet must have, nor does it require helmets to be tested before being sold. However, when helmets are tested, the NHTSA Standard requires that they meet certain requirements with respect to impact, penetration, retention, configuration, peripheral vision/brow opening, and labeling in order to be found in compliance.

In 2004, NHTSA published a tri-fold flyer entitled "How to Identify Unsafe Motorcycle Helmets." The flyer does not definitively list which helmets do not meet the NHTSA Standard, but rather provides information and guidance on helmet features that may indicate whether a given helmet meets the standard.

In the FAC, Plaintiffs allege that all citations issued to motorcycle drivers between 1971 and 1994, when the Department adopted specific standards for motorcycle helmets, are "unfounded as a matter of law." In addition, Plaintiffs assert that Defendants have failed to provide any training to their officers on any aspect of the NHTSA Standard. Plaintiffs allege a

series of incidents between February 2009 and March 2013 in which LVMPD, NHP, North Las Vegas, Henderson, Boulder City, and Mesquite police officers stopped individual Plaintiffs while they were riding their motorcycles. During these stops, the officers either questioned Plaintiffs regarding their helmets or issued citations for failing to wear helmets or wearing helmets that were not certified with the DOT label. Plaintiffs allege that with respect to the stops that resulted in the issuance of a helmet ticket, the officers involved made no attempt to gather evidence, such as by notating the year, make, model, or size of the helmet. The majority of these citations were dismissed in court.

Plaintiffs allege three causes of action in the FAC arising out of this series of incidents. The first is a municipal liability claim brought under 42 U.S.C. § 1983 and Monell v. Dept. of Social Servs., 436 U.S. 658 (1978), against Clark County, Boulder City, North Las Vegas, Henderson, Mesquite, Las Vegas, LVMP, and NHP (collectively, the "Entity Defendants"). The second is a Section 1983 supervisory liability claim asserted against Defendants Wright, Gillespie, Conger, Moers, Chronister, and Tanner (collectively, the "Supervisory Defendants"). The remaining defendants are individual law enforcement officers (collectively, the "Individual Defendants"). With respect to the first and second causes of action, Plaintiffs assert two separate theories of liability against the Entity and Supervisory Defendants. First, Plaintiffs allege that these Defendants knew and approved of the acts of the Individual Defendants, who by stopping and issuing citations to Plaintiffs violated Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure, false arrest, and citation without probable cause. Due to this ratification, Plaintiffs also allege that the Individual Defendants' actions represent official policy and custom of the Entity Defendants. Second, Plaintiffs allege that the Entity and Supervisory Defendants failed to train their officers in the NHTSA Standard, how to determine compliance or noncompliance with that standard, or how to collect the evidence necessary to support a citation for violation of the Helmet Law. This failure to train led to the Individual Defendants' violation of Plaintiffs' Fourth Amendment rights described above.

Plaintiffs' third cause of action is asserted against the Individual Defendants, all of whom are law enforcement officers employed by the Entity Defendants and supervised by the

1   Supervisory Defendants. In their third cause of action, also brought under Section 1983,

2   Plaintiffs allege that the Individual Defendants violated their Fourth Amendment rights to be free

3   from unreasonable search and seizure, false arrest, and citation without probable cause by

4   detaining them, issuing them citations for violation of the Helmet Law, and participating in the

5   ensuing prosecutions without probable cause. Plaintiffs further allege that these Defendants

6   "have an ongoing pattern and practice of engaging in arbitrary and discriminatory enforcement

7   of the [NHTSA] Standard as a pretext for invading the liberties and civil rights of the [Plaintiffs],

8   with no demonstrated concern for [their] safety or civil rights . . . ." FAC ¶ 117, ECF No. 60.

9

10   **III.   LEGAL STANDARD**

11       A pleading must contain "a short and plain statement of the claim showing that the

12   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss for failure

13   to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion

14   to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the

15   complaint are accepted as true and are construed in the light most favorable to the non-moving

16   party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a

17   motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a

18   claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the

19   defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

20   (citation and internal quotation marks omitted).

21

22   **IV.   DISCUSSION**

23       After reviewing the briefs filed in connection with the various motions to dismiss, the

24   Court concludes that the FAC must be dismissed with prejudice. Without addressing Defendants'

25   other arguments in support of dismissal, the Court finds that Plaintiffs have failed to allege facts

26   that would enable it to infer that Defendants violated their constitutional rights. Therefore,

27   Plaintiffs' Section 1983 claims, including their Monell claims, must fail. Further, even if

28

1    Plaintiffs had alleged sufficient facts, the Individual Defendants would be entitled to qualified
2    immunity.

3

4        **A.  Fourth Amendment Claims Against Individual Defendants**

5            Plaintiffs' Fourth Amendment claims are based on their allegations that the Individual
6    Defendants detained and issued Helmet Law citations to Plaintiffs without probable cause.
7    Plaintiffs allege that these actions violated three specific rights protected by the Fourth
8    Amendment: (1) freedom from unreasonable search and seizure; (2) freedom from false arrest,
9    and (3) freedom from citation without probable cause.

10           Based on its review of the briefs and the applicable law, the Court concludes that
11    Plaintiffs have not alleged facts that, even taken as true, support a claim that the Individual
12    Defendants violated their Fourth Amendment rights. As Plaintiffs have not alleged any
13    underlying Fourth Amendment violations, their <u>Monell</u> claims against the Entity and Supervisory
14    Defendants must also fail. The Court will consider in turn each of the specific Fourth
15    Amendment claims that Plaintiffs assert. Because the claims raised against the Entity and
16    Supervisory Defendants depend on the acts of the Individual Defendants being found
17    unconstitutional, the Court addresses the allegations against the Individual Defendants first.

18                    *1.  Seizure Without Reasonable Suspicion*

19           While Plaintiffs' allegations in this case are focused on the issuance of citations without
20    probable cause to do so, the FAC does contain the allegation that at least one Plaintiff was
21    detained by the Individual Defendants in violation of the Fourth Amendment. <u>See</u> FAC ¶ 123.
22    The Court will therefore analyze this claim separately from Plaintiffs' allegations with respect to
23    being issued citations.

24           The Fourth Amendment provides that "[t]he right of the people to be secure in their
25    persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be
26    violated . . . ." U.S. Const. amend. IV. This protection against unreasonable searches and seizures
27    "extends to the brief investigatory stop of a vehicle." <u>United States v. Garcia-Camacho</u>, 53 F.3d
28    244, 245 (9th Cir. 1995). "A police-initiated traffic stop is reasonable under the Fourth

1    Amendment if the police stop the vehicle because of a reasonable suspicion that the vehicle's

2    occupants have broken a law." United States v. Hartz, 458 F.3d 1011, 1017 (9th Cir. 2006)

3    (internal quotation marks omitted). "Reasonable suspicion exists if specific, articulable facts . . .

4    together with objective and reasonable inferences suggest that the persons detained by the police

5    are engaged in criminal activity." Id. (internal quotation marks omitted) (alteration in original).

6    The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a

7    preponderance of the evidence, and obviously less than is necessary for probable cause."

8    Navarette v. California, 134 S.Ct. 1683, 1687 (2014) (citation and internal quotation marks

9    omitted). In determining whether an officer had reasonable suspicion to conduct a stop of a

10   vehicle, the court must consider the totality of the circumstances involved in the stop. Easyriders

11   Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1496 (9th Cir. 1996).

12          The Court finds that Plaintiffs have failed to state a claim that they were detained

13   without reasonable suspicion in violation of the Fourth Amendment. Plaintiffs' lone allegation

14   with respect to this claim is that Plaintiff Stilwell was unlawfully detained by Defendant West on

15   March 2, 2013. FAC ¶ 123. The FAC reveals, however, that West had reasonable suspicion to

16   detain Stilwell. According to the FAC, "[p]rior to the detainment, Mr. Stilwell was operating his

17   motorcycle on I-15 while wearing his favorite 'wig hat,' a helmet with a wig glued to the

18   outside." Id. ¶ 57. Plaintiffs do not allege that Stilwell's "wig hat" helmet bore the required DOT

19   label or was otherwise obviously in compliance with the Helmet Law. If an officer is to enforce

20   the Helmet Law, he or she must be allowed to conduct brief investigatory stops of individuals

21   whose headgear merits further investigation. The use of a helmet with a wig glued to the outside

22   may give the appearance that the user is violating the Helmet Law by wearing a non-complying

23   helmet or no helmet at all. West's detainment of Stilwell was thus supported by reasonable

24   suspicion.[1]

25          Plaintiffs' remaining allegations with respect to the Fourth Amendment do not appear to

26   _____

27   [1] Even if Plaintiffs had alleged that Stilwell's helmet actually *did* comply with the Helmet Law
     and the NHTSA Standard, this would not change the Court's analysis of whether reasonable suspicion
28   existed at the time West stopped him. See United States v. Mariscal, 285 F.3d 1127, 1131 (9th Cir. 2002)
     ("[A] mere mistake of fact will not render a stop illegal, if the objective facts *known to the officer* gave
     rise to a reasonable suspicion that criminal activity was afoot.") (emphasis added).

relate to being detained without reasonable suspicion. However, to the extent that Plaintiffs do allege that the remaining incidents between them and the Individual Defendants constitute Fourth Amendment violations under this theory, these allegations also fail to state a claim. As will be discussed in Section IV.A.2 below, Plaintiffs' allegations, even taken as true, establish that the Individual Defendants had probable cause to issue them citations for violation of the Helmet Law. As probable cause requires more proof of wrongdoing than is required for reasonable suspicion, see Navarette, 134 S.Ct. at 1687, Plaintiffs' Fourth Amendment claim must fail insofar as it is based on the theory that they were seized without reasonable suspicion.

### 2.   False Arrest And Improper Issuance of Citations

The next constitutional violation alleged by Plaintiffs is that by issuing citations without probable cause, the Individual Defendants violated Plaintiffs' Fourth Amendment rights to be free from false arrest. As Plaintiffs' claims for false arrest and citation without probable cause can legally be understood as raising the same claim—false arrest without probable cause—they will be analyzed together under this legal rubric.[2]  To state a claim for false arrest under Section 1983, Plaintiffs must allege facts establishing that Defendants arrested them "without probable cause or other justification." Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001); see also Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992) ("Arrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983."). Specific intent is not required to establish a Fourth Amendment false arrest claim under Section 1983. Caballero, 956 F.2d at 206. "Rather, 'the question is whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [her], without regard to [her] underlying intent or motivation.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 397-98 (1989) (internal quotation marks omitted) (alterations in original)). Thus, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable [arrest];

---

[2] The Court has not found any authority establishing a separate cause of action under the Fourth Amendment for "citation without probable cause" that does not also reflect analysis under the false arrest inquiry.  See, e.g., Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1498-1502 (9th Cir. 1996) (analyzing improper issuance of citation theory as claim for false arrest since the issuance of a citation under California law is equivalent to an arrest).

1    nor will an officer's good intentions make an objectively unreasonable [arrest] constitutional."

2    Caballero, 956 F.2d at 206 (citation and internal quotation marks omitted) (alterations in

3    original).

4             The Court finds that Plaintiffs have failed to state a Fourth Amendment false arrest claim

5    for two reasons. First, Plaintiffs have failed to allege facts that, taken as true, would establish that

6    they were arrested by the Individual Defendants. For Fourth Amendment purposes, an "arrest" is

7    equivalent to a seizure of the person and may be effected by the application of physical force on

8    the arrestee accompanied by the lawful authority to do so. California v. Hodari D., 499 U.S. 621,

9    624 (1991). Nevada's definition of arrest is similar: "an arrest is defined as 'the taking of a

10   person into custody, in a case and in the manner authorized by law.' . . . It is sufficient if the

11   person arrested understands that he is in the power of the one arresting, and submits in

12   consequence." Minor Boy v. State, 537 P.2d 477, 463 (Nev. 1975) (quoting N.R.S. 171.104)

13   (citations and internal quotation marks omitted). Here, Plaintiffs allege that the Individual

14   Defendants falsely arrested them by stopping them while riding their motorcycles and issuing

15   them citations for violation of the Helmet Law. Plaintiffs do not allege that they were seized

16   through the application of physical force or that they were otherwise taken into custody. The

17   mere allegation that the Individual Defendants stopped Plaintiffs while riding their motorcycles

18   is not enough to constitute an allegation that Plaintiffs were arrested for purposes of the Fourth

19   Amendment. Otherwise, all traffic stops would constitute "arrests" and would be subject to the

20   accompanying requirement that the officers conducting the stops possess probable cause—a

21   result that would vitiate the longstanding case law requiring only reasonable suspicion in such

22   situations.

23            Second, even if Plaintiffs had adequately alleged that they were arrested, they have failed

24   to allege facts demonstrating that the arrests were made or the citations were issued without

25   probable cause. The facts alleged in the FAC demonstrate that the Individual Defendants had

26   probable cause to detain Plaintiffs and issue them citations. Plaintiffs' claim for false arrest and

27   improper issuance of citations under the Fourth Amendment therefore fails.

28

1   Probable cause "exists when officers have knowledge or reasonably trustworthy
2   information sufficient to lead a person of reasonable caution to believe that an offense has been
3   or is being committed by the person being arrested." Ramirez v. City of Buena Park, 560 F.3d
4   1012, 1023 (9th Cir. 2009) (internal quotation marks omitted). Probable cause does not require
5   evidence that is conclusive of guilt, but it does require "a fair probability, given the totality of the
6   evidence," that a suspect has committed a crime. Garcia v. Cnty. of Merced, 639 F.3d 1206,
7   1209 (9th Cir. 2011) (internal quotation marks omitted).

8   In this case, Plaintiffs allege that they were given citations for violating Nevada's Helmet
9   Law, the relevant part of which states as follows:

10       1. The Department [of Public Safety] shall adopt standards for protective
11   headgear and protective glasses, goggles or face shields to be worn by the drivers
and passengers of motorcycles and transparent windscreens for motorcycles.
12       2. Except as provided in this section, when any motorcycle, except a
13   trimobile or moped, is being driven on a highway, the driver and passenger shall
wear protective headgear securely fastened on the head and protective glasses,
14   goggles or face shields meeting those standards. Drivers and passengers of
15   trimobiles shall wear protective glasses, goggles or face shields which meet those
standards.
16

17   N.R.S. 486.231. Violation of the Helmet Law is punishable as a misdemeanor. N.R.S. 486.381.

18   In 1994, the Department adopted the NHTSA Standard, see 49 C.F.R. § 571.218, as the
19   applicable standard for purposes of the Helmet Law. N.A.C. 486.015.[3] As discussed in Section
20   II.B above, the NHTSA Standard is a list of detailed minimum performance requirements for
21   motorcycle helmets that must be met when the helmet is subjected to various forms of testing.
22   Importantly, the NHTSA Standard also requires that each helmet "be labeled permanently and
23   legibly with a label, constituting the manufacturer's certification that the helmet conforms to the
24   applicable Federal motor vehicle safety standards." 49 C.F.R. § 571.218, S5.6.2. Among other
25   information relating to the manufacturer, this label must contain the symbol "DOT," and beneath
26   it the term "FVMSS No. 218," and beneath that the word "CERTIFIED," all in colors that
27   contrast with the background of the label. Id. S5.6.2(a).

28   _____

[3] The NHTSA standard was adopted as it existed on January 1, 1994. Id.

- 10 -

In the FAC, Plaintiffs list a number of incidents in which they were issued citations for violating the Helmet Law, allegedly without probable cause. But Plaintiffs' allegations themselves establish that the officers did in fact have probable cause. Each of the Helmet Law citations allegedly issued to the named Plaintiffs was issued because the person stopped was either wearing a helmet without the required DOT labeling or because the Plaintiff was not wearing a helmet at all.[4] See FAC ¶ 38 (Plaintiff Stilwell issued a citation because "helmet not NDOT approved"); ¶ 41 (Plaintiff Jurasinski issued a citation after inspection of her helmet, the labeling of which had allegedly been painted over); ¶ 44 (Plaintiff Stilwell issued a citation for failure to wear a helmet); ¶ 45 (Plaintiff Stilwell issued a citation for failure to use a helmet); ¶ 46 (Plaintiff Stilwell issued a citation for wearing a modified helmet cut from a regular DOT-approved helmet); ¶ 47 (Plaintiff Stilwell issued a citation for wearing "a non-DOT approved motorcycle helmet that only covered the top of his head"); ¶ 50 (Plaintiff Gonzalez issued a citation for wearing "a very small disk approximately 4-6 inches round and 1/3 inch thick on head"); ¶ 52 (Plaintiff Gonzalez issued a citation for wearing a helmet "approximately 4-6 inches round and 1/3 inch thick on top of head not approved by NHTSA. Has chin strap"); ¶ 56 (Plaintiff Davis issued a citation for "wearing hat, not helmet").[5] Plaintiffs have also included allegations of citations issued to individuals not named as Plaintiffs; each of the citations for which a stated reason is given in the FAC indicates that the citation was issued for failure to wear a "DOT-approved" helmet. See FAC ¶¶ 42, 53-55.

The FAC demonstrates on its face that in almost every instance in which Plaintiffs were issued Helmet Law citations, the reason given was that Plaintiffs were not wearing helmets at all or were wearing helmets that did not display the required DOT labeling—both of which are clear violations of the Helmet Law and the NHTSA Standard. Critically, Plaintiffs do *not* allege that

---

[4] As discussed in Section IV.A.1 above, Plaintiff Stilwell was issued a citation after being stopped while wearing a "wig hat" helmet. FAC ¶ 57. The Court analyzed the officer's detention of Stilwell in the context of its reasonable suspicion analysis. Because this particular citation was not issued for violation of the Helmet Law, the Court does not include it in the analysis here.

[5] In addition, Plaintiff Stilwell alleges he was issued a Helmet Law citation on November 29, 2009. FAC ¶ 43. Stilwell alleges no facts in this paragraph relating to whether he was wearing a helmet at all, let alone one that complied with the Helmet Law. The Court cannot infer from this allegation that Stilwell was issued a citation without probable cause.

1   they were in fact wearing helmets with the required labeling on these occasions. Thus, the

2   citations allegedly issued for those reasons were supported by probable cause. The only named

3   Plaintiff who was not cited for those reasons is Gonzalez, who alleges that she was cited on

4   multiple occasions for wearing a helmet approximately 4-6 inches around and 1/3 inch thick. Id.

5   ¶¶ 50, 52. One of the citations issued to Gonzalez states that her helmet was not NHTSA-

6   approved, while the other does not. Nevertheless, the Court finds that the appearance of this

7   helmet as described would be sufficient to support a finding of probable cause that the helmet

8   violated the NHTSA standard. See Davison v. Venemon, 857 F.2d 1477 (9th Cir. 1988)

9   ("Probable cause does not require conclusive evidence of guilt, but only some objective evidence

10  which would allow a reasonable officer to deduce that a particular individual has committed or is

11  in the process of committing a criminal offense") (internal quotation marks omitted).[6]

12          Plaintiffs argue that the Individual Defendants' lack of probable cause is demonstrated by

13  their inability to answer questions from Plaintiffs about how their helmets specifically violated

14  the NHTSA Standard and because, by not writing down any information about the helmets

15  Plaintiffs were wearing, the officers demonstrated ignorance as to the elements of proof

16  necessary to convict under that standard. As Plaintiffs' allegations reveal, however, the officers

17  *were* able to give sufficient explanation for how Plaintiffs violated the Helmet Law and the

18  NHTSA Standard. The reasons given by the officers—such as failing to wear a helmet, wearing

19  a helmet without the DOT label, or wearing a helmet that objectively appeared not to meet the

20  NHTSA Standard—were sufficient to establish probable cause that Plaintiffs violated the law.

21

22      **B.  Qualified Immunity**

23          Even assuming that the Individual Defendants' issuance of citations to Plaintiffs did

24  violate their Fourth Amendment rights, the Court finds that these defendants would still be

25  entitled to qualified immunity for those actions. "The doctrine of qualified immunity protects

26

27          [6] Cf. Easyriders Freedom F.I.G.H.T., 92 F.3d at 1498 (analyzing a California motorcycle helmet
    statute implementing the NHTSA standard and finding that, in the context of investigatory stops of

28  motorcyclists wearing helmets consisting of fiberglass shells covering only the top of the head with liners
    one-half inch thick or less, "other objective evidence, such as the appearance of the helmet," could
    provide reasonable suspicion for a stop).

government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id. Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). The plaintiff bears the burden of proving that the right was clearly established. Id. at 1125.

The Court finds that the Individual Defendants are entitled to qualified immunity because Plaintiffs have not shown that they violated a clearly established right. Insofar as Plaintiffs argue that the clearly established right was Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure or false arrest, the Court finds, as noted above, that there has been no such violation. Probable cause existed to detain the Plaintiffs. Plaintiffs have failed to show the existence of a clearly established right violated by the Individual Defendants through the conducting of investigatory stops for suspected violation of the Helmet Law and the issuing of Helmet Law citations. The Individual Defendants would therefore be entitled to qualified immunity for those detentions and citations.

### C.  Remaining Constitutional Claims

In addition to claiming that the Individual Defendants violated Plaintiffs' Fourth Amendment rights by stopping them and issuing them citations without probable cause, Plaintiffs vaguely assert other constitutional violations against the Entity and Individual Defendants. These allegations are also insufficient to state a claim for violation of any other constitutional right. The Court addresses each claim in turn.

1

### 1. Due Process Clause

First, Plaintiffs assert a claim against the Entity Defendants under the due process clause of the Fourteenth Amendment. Plaintiffs allege that the Entity Defendants have a "pattern and practice of dismissing Helmet Tickets when contested in courts of non-record below or appealed to the courts of record above, thereby denying the Class Members their Due Process Rights to challenge enforcement of the [NHTSA] Standard under the [Fourteenth] Amendment." FAC ¶ 101.

To establish a Fourteenth Amendment due process claim under Section 1983, Plaintiffs must establish three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of required process." Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

The Court finds that Plaintiffs' allegations, even taken as true, are insufficient to establish a due process claim. Plaintiffs allege that Defendants violated their "right to challenge enforcement of the CFR Standard." FAC ¶ 101. It is true that individuals have a First Amendment right to petition for redress of grievances. Gini v. Las Vegas Metropolitan Police Dept., 40 F.3d 1041, 1044 (9th Cir. 1994). But Plaintiffs have not alleged any facts establishing that Defendants prevented them from accessing the courts or petitioning the government for redress of grievances; indeed, this very litigation demonstrates that Plaintiffs are able to access the courts to seek a remedy for the violations they allege. The Court simply cannot infer from Plaintiffs' allegations that Defendants denied them due process by dismissing their Helmet Law citations when challenged. Nor have Plaintiffs identified any legal authority establishing that they possess a protected liberty interest on any basis other than the right to access the courts and petition for redress of grievances. As they have failed to allege the deprivation of a legally

/ / /

/ / /

/ / /

1    protected property interest by the government,[7] Plaintiffs' due process claim is therefore

2    dismissed.

3                              **2.   *Equal Protection Clause***

4            Plaintiffs also assert a claim under the equal protection clause of the Fourteenth

5    Amendment. Plaintiffs' equal protection claim is alleged against both the Entity Defendants and

6    the Individual Defendants. Plaintiffs allege that the Entity Defendants engage in arbitrary and

7    discriminatory enforcement of the Helmet Law as evidenced by their failure to enforce the

8    Helmet Law's companion criminal statute, N.R.S. 486.241, which prohibits the sale of helmets

9    and other protective gear that does not meet the NHTSA Standard. Further, Plaintiffs allege that

10   the Entity and Individual Defendants engage in arbitrary and discriminatory enforcement of the

11   Helmet Law by imposing different amounts of fines and fees on the Class Members with no

12   rational basis, FAC ¶ 102, and by using the Helmet Law "as a pretext for invading the liberties

13   and civil rights of the Class Members, with no demonstrated concern for the safety or civil rights

14   of the Class Members," id. ¶ 117. In the FAC, the "Class Members" are defined as all persons

15   holding an "M" endorsement on their Nevada driver's licenses. Id. ¶ 26.

16           The government has "broad discretion to conduct criminal prosecutions, including [the]

17   power to select the charges to be brought in a particular case." Ball v. United States, 470 U.S.

18   856, 859 (1985); see also United States v. Batchelder, 442 U.S. 114, 124 (1979) ("Whether to

19   prosecute and what charge to file . . . are decisions that generally rest in the prosecutor's

20   discretion."). Notwithstanding this discretion, the government's enforcement of its criminal laws

21   "is subject to constitutional constraints." Rosenbaum v. City & Cnty. of San Francisco, 484 F.3d

22   1142, 1152 (9th Cir. 2007). To prevail on a Fourteenth Amendment discriminatory enforcement

23

24   _____

25           [7] The Court recognizes that Plaintiff Stilwell alleges he was found guilty on two occasions, once
     in Boulder City and once in North Las Vegas, and that the citations were dismissed after he appealed to
26   the district court. FAC ¶¶ 45, 47. Even assuming these allegations could meet the standard for a due
     process claim, two incidents in two different jurisdictions are not enough to state a claim for Monell
27   liability against a municipality. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1995) ("Liability for
     improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon
28   practices of sufficient duration, frequency and consistency that the conduct has become a traditional
     method of carrying out policy.").

1   claim under the equal protection clause, "a plaintiff must demonstrate that enforcement had a

2   discriminatory effect and the police were motivated by a discriminatory purpose." Id.

3       Plaintiffs' equal protection claim must be dismissed because Plaintiffs have not met the

4   first equal protection prong—namely, they have failed to allege facts that would support a

5   finding that enforcement of the Helmet Law had a discriminatory effect. To establish a

6   discriminatory effect, "the claimant must show that similarly situated individuals . . . were not

7   prosecuted." Rosenbaum, 484 F.3d at 1152 (quoting United States v. Armstrong, 517 U.S. 456,

8   465 (1996)). "The goal of identifying a similarly situated class . . . is to isolate the factor

9   allegedly subject to impermissible discrimination. The similarly situated group is the control

10  group." Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995), as amended (Dec. 29,

11  1995) (quoting United States v. Aguilar, 883 F.2d 662, 706 (9th Cir. 1989)).

12      Plaintiffs propose two similarly situated classes of individuals. First, with respect to their

13  allegations against the Entity Defendants, Plaintiffs allege that they were treated differently from

14  those targeted by the Helmet Law's companion criminal statute—that is, retail establishments.

15  See N.R.S. 486.241 (prohibiting the sale or distribution of protective headgear or eyewear that

16  does not meet the standards adopted by the Department of Motor Vehicles and Public Safety).

17  But Plaintiffs, who are motorcycle riders, are not similarly situated to retail establishments. A

18  comparison of how Nevada's motorcycle helmet laws have been enforced between motorcycle

19  riders and retail establishments involves far too many factors to properly be the subject of an

20  equal protection claim.

21      Second, Plaintiffs attempt to identify all "Class Members"—that is, all licensed

22  motorcycle drivers in Nevada—as a similarly situated class of individuals.[8] But Plaintiffs have

23

24          [8] While Plaintiffs make the passing allegation in the FAC that the majority of Helmet Tickets are
    issued to drivers of Harley Davidson and other similar motorcycles, they importantly do not allege that
25  Defendants failed to enforce the Helmet Law against similarly situated drivers of other brands of
    motorcycles. Plaintiffs' allegation that "[t]he Entity Defendants have no evidence to rebut the
26  presumption that Helmet Tickets are issued to a particular group of Class Members primarily based upon
    the make and/or appearance of their motorcycles," FAC ¶ 68, is particularly telling in this respect.
27  Plaintiffs do not allege that Defendants actually enforced the law in a discriminatory manner, but rather
    that they have "no evidence to rebut" such a presumption. To state a claim, it is not enough that Plaintiffs
28  point to the absence of rebuttal evidence; they must affirmatively allege what they believe to be the
    constitutional violation. Plaintiffs have not done so here.

1     not distinguished between a class of individuals who were the subject of discriminatory

2     enforcement and a "control group" of similarly situated individuals. Further, to the extent

3     Plaintiffs are attempting to use drivers of other types of motor vehicles (such as automobiles) as

4     their control group, the Court finds again that the groups are not similarly situated. This Court

5     agrees with the Nevada Supreme Court that "[t]here are differences in the physical

6     characteristics of automobiles and motorcycles. Differences in the handling and operation of

7     motorcycles require different skills and produce different consequences should an accident

8     occur. These factors justify the classification and disparate treatment of motorcyclists." State v.

9     Eighth Judicial Dist. Court, 708 P.2d 1022, 1025 (Nev. 1985).

10         For these reasons, the Court finds that Plaintiffs have failed to allege an essential element

11     of their equal protection claim.[9] This claim must therefore be dismissed.

12                   ***3.   Privileges and Immunities Clause***

13         Finally, Plaintiffs assert a cause of action under the privileges and immunities clause of

14     the Fourteenth Amendment. Plaintiffs allege that the Entity Defendants violated their right to

15     travel by failing to train their officers and maintaining policies of discriminatory enforcement.

16         "[T]he constitutional right to travel from one State to another is firmly embedded in our

17     jurisprudence." Saenz v. Roe, 526 U.S. 489, 498 (1999) (internal quotation marks omitted). The

18     right to travel "embraces at least three different components. It protects the right of a citizen of

19     one State to enter and to leave another State, the right to be treated as a welcome visitor rather

20     than an unfriendly alien when temporarily present in the second State, and, for those travelers

21     who elect to become permanent residents, the right to be treated like other citizens of that State."

22     Id. at 500. "Discrimination on the basis of out-of-state residency is a necessary element for a

23     claim under the Privileges and Immunities Clause." Giannini v. Real, 911 F.2d 354, 357 (9th Cir.

24     1990).

25         Here, Plaintiffs have simply alleged no facts whatsoever to support a claim for violation

26     of their right to travel. Construed in its most favorable light, the FAC appears to be alleging that

27

28        [9] As Plaintiffs indicate repeatedly in their briefing, they are not challenging the constitutionality of the Helmet Law.

Defendants' practice of stopping Plaintiffs and citing them for violating the Helmet Law prevented them from travelling freely. But as <u>Saenz</u> demonstrates, the right to travel found in the Fourteenth Amendment is concerned with preventing discrimination against out-of-state visitors and new residents of a state. Plaintiffs have not alleged any facts establishing that Defendants discriminated against them on the basis of out-of-state residency. Plaintiffs therefore have failed to state a claim under the privileges and immunities clause.

The Fourth and Fourteenth Amendment claims discussed above represent all of the allegations against the Individual Defendants in the FAC's third cause of action. Because the Court has found that Plaintiffs have failed to state a claim under any of these constitutional theories, the third cause of action is dismissed. The Court now turns to the first and second causes of action, which contain additional assertions of municipal and supervisory liability.

### D.  Municipal Liability (<u>Monell</u> Claim)

Plaintiffs' first cause of action is for municipal liability under Section 1983 based on a failure to train and ratification of the Individual Defendants' actions. Given the Court's finding that Plaintiffs have not alleged a violation of their constitutional rights by the Individual Defendants, there is no basis for municipal liability. <u>See</u> <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 653 (9th Cir. 2001) ("Neither a municipality nor a supervisor, however, can be held liable under § 1983 where no injury or constitutional violation has occurred."); <u>Scott v. Henrich</u>, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights. Here, the municipal defendants cannot be held liable because no constitutional violation occurred."). Similarly, Plaintiffs' claim that the Entity Defendants failed to train their officers in the NHTSA standard must be rejected because Plaintiffs have not shown that any constitutional violation has occurred. <u>Long v. City & Cnty. of Honolulu</u>, 511 F.3d 901, 907 (9th Cir. 2007) ("If there was no constitutional violation of [the plaintiff's] rights, there is no basis for finding the officers inadequately trained.") (internal quotation marks omitted). Plaintiffs' first cause of action is therefore dismissed.

1

2          **E.  Supervisory Liability**

3          Plaintiffs' second cause of action is a Section 1983 claim asserted against the Supervisory

4   Defendants under a theory of supervisory liability. This claim also fails as a matter of law

5   because the Court has found that Plaintiffs have not alleged a constitutional violation. <u>See</u>

6   <u>Jackson</u>, 268 F.3d at 653 (a supervisor cannot be held liable under Section 1983 if no

7   constitutional violation has occurred). In addition, for the reasons discussed with respect to the

8   Entity Defendants, the Supervisory Defendants cannot be liable for failure to train given the

9   Court's ruling that no constitutional violation was alleged. <u>See</u> <u>Long</u>, 511 F.3d at 907. The

10  second cause of action is dismissed.

11

12         **F.  Leave to Amend**

13         When dismissing a complaint pursuant to Rule 12(b)(6), a district court should ordinarily

14  grant leave to amend "unless it determines that the pleading could not possibly be cured by the

15  allegation of other facts." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal

16  quotation marks omitted). Here, Plaintiffs have twice attempted to cure their allegations with

17  additional facts. First, in their response to the City of Henderson's original Motion to Dismiss,

18  Plaintiffs submitted a proposed amended complaint containing additional factual allegations.

19  ECF No. 18-11. The Court considered this proposed pleading and found that it did not cure the

20  deficiencies identified in Defendants' original motions to dismiss. <u>See</u> Order at 3, ECF No. 42.

21  Second, Plaintiffs have again attempted to cure the deficiencies in their pleading through the

22  FAC. As discussed in this Order, Plaintiffs were not able to do so. Moreover, based on the nature

23  of Plaintiffs' allegations, the Court finds that they cannot cure the stated deficiencies by alleging

24  additional facts. In light of this finding and Plaintiffs' multiple opportunities to amend, the Court

25  denies further leave to amend. Plaintiffs' claims are dismissed with prejudice.

26

27  **V.      CONCLUSION**

28         For the reasons stated above,

- 19 -

1    **IT IS ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 102, 103, and 106)

2    are GRANTED.

3    **IT IS FURTHER ORDERED** that this case is DISMISSED WITH PREJUDICE.

4

5    **DATED**: July 26, 2016.

6    _____

7    **RICHARD F. BOULWARE, II**

8    **United States District Judge**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28